CASE NO. 12-5062

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

WILLIAM T. DICKSON
Respondent/Appellant,

vs.

PUBLIC SERVICE COMPANY OF OKLAHOMA,

Movant/Appellee

_____

**BRIEF IN CHIEF OF APPELLANT**

_____

William T. Dickson
OBA # 10634
1743 71st Street
Tulsa, Oklahoma 74136
918-550-1463

Appeal From Order Imposing Sanctions Pursuant to 28 U.S.C. § 1927
by the United States District Court For the Northern District of Oklahoma
U.S. District Judge T.C. Kern

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………..……………......iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION…………………………………...……………..1

DISTRICT COURT JURISDICTION…………...……………………...…………1

COURT OF APPEAL JURISDICTION……………………………….…………1

ISSUES PRESENTED FOR REVIEW………...…………………...……………2

STATEMENT OF THE CASE…………………………….…………………….4

STATEMENT OF FACTS…………………………………..…………………....6

SUMMARY OF ARGUMENT…………………………..……………….…..14

STANDARD OF REVIEW……………………………...……………………..16

ARGUMENT……………………………………………...……………..………17

I.     The District Court Lacked Jurisdiction To Consider a Motion For
       Sanctions……………...……………………………..……………....17

II.    The Actions of the District Court Violate the Requirements of Due
       Process…………………………………………………………..……..20

III.   The Actions of the District Court Violate the Opinion and
       Mandate of This Court in Appeal No. 06-5015……………………..…..23

A.     The holding of this Court in Appeal 06-5015…………………..………23

B.     The Actions the Court Found Sanctionable…………………….……....25

1.    Seeking Leave to Amend to Add Additional Parties……………..………..25

2.    Seeking an Injunction……………..……………………………………....27

3.    Motion for Partial Summary Judgment……………………..…………...29

4.    Summary Judgment With Respect to 66 O.S. § 7..………………..………30

IV.   The Actions of Dickson Did Not Constitute Sanctionable Conduct.............31

A.    Seeking Leave to Amend to Add Additional Parties………………………33

B.    Seeking an Injunction……………..……………………………………34

C.    Motion for Partial Summary Judgment…………………………………34

D.    Summary Judgment With Respect to 66 O.S. § 7..………………………...37

E.    Dickson's Letter to PSO's Counsel………………………………....46

V.    The District Court Erred in Permitting a Double Recovery for PSO……....48

VI.   The District Court Erred in Allowing Attorney Fees
      Based on Block Billing and For Travel Costs……………………....50

CONCLUSION………………………………………………………..…52

CERTIFICATE OF COMPLIANCE…………………………………....53

CERTIFICATE OF SERVICE…………………………..………………....53

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Transok Pipe Line Company,* 552 P.2d 375 (Okla. 1976)………………..40

*Angier v. Mathew Exploration Corp*., 905 P2d 826 (Okl. App. 1995)…………....34

*Autorama Corp. v. Stewart*, 802 F.2d 1284 (10th Cir. 1984)……………………...32

*B. Willis, C.P.A., Inc. v. BNSF Railway Company,
Union Pacific Railroad Company and
Public Service Co. of Oklahoma*, 531 F.3d 1282 (10th Cir. 2008)………..… *passim*

*Board of County Com'rs of Creek County v. Casteel*,
522 P.2d 608 (Okl. 1974)…………………………………………………………....38

*Brammer-Hoelter v. Twin Peaks Charter Academy*,
492 F.3d 1192 (10th Cir. 2007)…………………………………………………...22

*Bowen v. Amoco Pipeline Co*., 254 F.3d 925 (10th Cir. 2001)………………....50

*Braley v. Campbell*, 832 F.2d 1504, 1512(10th Cir. 1987)………………….…..31

*Bratcher v. Bray-Doyle Independent School District No. 42 of
Stephens County, Oklahoma*, 8 F.3d 722 (10th Cir.1993)…………………..20, 51

*Brown v. McCormick*, 608 F.2d 410 (10th Cir. 1979)…………..………………23

*Browning Debenture Holders' Committee v. DASA Corp*.,
560 F.2d 1078, 1088 (2d Cir. 1977)…………………………………..………..32

*Burlington Northern & Santa Fe Railway Company v. Phillips Petroleum
Company*, 164 F. Supp. 2d 1272 (N.D. Okla. 2001)…………………..…………25

*Cherokee Nation v. State of Oklahoma*, 461 F.2d 674 (10th Cir. 1972)………....24

*City of Chanute, Kan. v. Williams Natural Gas Co*.,
955 F.2d 641 (10th Cir. 1992)…………………………………...……..………36

*Dreiling v. Peugeot Motors of America, Inc.*,
768 F.2d 1159 (10th 'Cir. 1985)…………………………………..……………31

*Eateries v. J.R. Simplot Co.*, 346 F.3d 1225 (10th Cir. 2003)…………..…………50

*Goldberg's Loan Office v. Evans*, 37 P.2d 286 (Okla. 1934)……………...……...47

*Hamilton v. Boise Cascade Exp.* 519 F.3d 1197 (10th Cir. 2008)……....…16, 17, 48

*Houck v. Hold Oil Corp.*, 867 P.2d 451 (Okla. 1993)……………………..……...52

*In Re Four Seasons Securities Laws Litigation*,
502 F.2d 834, 842 (10th Cir. 1974)…………………………………………...………23

*In Re Western Real Estate Fund, Inc*., 922 F.2d 592 (10th Cir. 1990)…………......47

*Jones v. Farmers Ins Exchange of Los Angeles Cal*,
112 F.Supp. 952 (D.C. Okl.)………………………………………...…………47

*Kirby Machinery, Inc. v. City of Oklahoma City*,
19 P.3d 331 (Ok. Civ. App. 2001)…………………………..……...………44, 45

*Lindhorst v. Wright*, 616 P.2d 450 (Okla. Ct. App. 1980)………..………...45

*Mann v. Reynolds*, 46 F.3d 1055 (10th Cir. 1995)……………………..…..46, 51

*Macsenti v. Becker,* 237 F.3d 1223 (10th Cir. 2001)……………………...……….50

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986)…………51

*McClelland v. Watling Latter Company*,
729 F.Supp. 1316 (W.D. Okla. 1990)……………………………...………...26

 *Nat. Park Hospitality v. Dept. of Interior*,
123 S.Ct. 2026, 538 U.S. 803 (2003)……………………………………….....33

*North Side State Bank v. Board of County Com'rs of Tulsa County*,
894 P.2d 1046 (Okla. 1994)……………………………………………...…..35

*Olcott v. Delaware Flood Co*., 327 F.3d 1115 (10th Circuit 2003)………........19, 20

*Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett*,
24 F.3d 136 (10th Cir. 1994)……………………………………………..…...26

*Oklahoma Gas & Electric Company v. Miller Brothers, 101 Ranch Trust*,
46 P.2d 570 (Okla. 1935)…………………………………………...………44

*Overnite Transp. Co. v. Chicago Indus. Tire Co.,*
697 F.2d 789 (7th Cir. 1983)……………………………………...……..20

*Phillips v. Hedges,* 124 P.3d 227 (Okla. 2005)…………………..……………38

*Public Service Company v. B. Willis, C.P.A., Inc.*,
941 P. 2d 995 (Okla. 1997)…………………………………………...……*passim*

*Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.*
155 P.3d 845 (Okla. App. 2006)………………………………...……….. *passim*

*Public Service Company v. B. Willis C.P.A., Inc*., No. 90569
(Unpublished)……………………………………………….…………………37

*Public Service Co. of Oklahoma v. Northeastern Oklahoma*
*Electric Coop., Inc.* 49 P.3d 80 (Okla. 2002)…………...…………………..……38

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983)…………………….……….....51, 52

*Roth v. Green,* 466 F.3d 1179, 1187 (10th Circuit 2006)……………..………16, 52

*Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368 (1980)………......33

*State ex rel Dept. of Tansp. v. Mehta,*
180 P.3d 1214 (Okla. App. 2008)…………………..……………………...……35, 39

*Steinert v. Winn Group, Inc.* 440 F.3d 1214 (10th Cir. 2006)………...16, 17, 19, 20

*Sterling Energy, Ltd v. Friendly National Bank,*
744 F.2d 1432 (10th Cir. 1984)…………………………………...……..32

*Summers v. Utah*, 927 F.2d 1165 (10th Cir. 1991)……………………...……20

*Tomazzoli v. Sheedy,* 804 F.2d 93 (7th Cir. 1986)…………………...……….52

*U.S. v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004)……………..……………20

*University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830 (1991)………...36

*Wang v. Hsu*, 919 F.2d 130 (10th Cir. 1990)……………………...……….46

*Watkins v. Board of Commissioners of Stephens County*,

174 P. 523 (Okla. 1918)……………………………………………...………………40


**Statutes**

28 U.S.C. § 1291……………………………………………………………………….1

28 U.S.C. § 1927……………………………………………………..……….. *passim*

42 U.S.C. § 1983……………………………………………………..……….. *passim*

42 U.S.C. § 1988……………………………………………………..…………....5, 11

5 O.S. § 6………………………………………………………………..……...49

5 O.S. § 7………………………………………………………………..……...49

5 O.S. § 8………………………………………………………………..……...49

12 O.S. § 940(A)……………………………………………...……....49

66 O.S. § 7………………………………...……...……………….....1, 38, 39, 46, 47

66 O.S. § 53………………………………………………..……...45


**Rules**

FRCP 11………………………………………………………..……………19, 20

FRCP 15(a)(2)…………………………………………..…………..……9, 34

FRCP 16(b)………………………………………………………..…….10

FRCP 54(d)…………………………………………………..……..11

FRCP 59 (d)…………………………………………………...……22

FRCP 65(d) (2) (A)-(C)……………………………………………27, 34

LCvR. 7.2 (e)……………………………………………………………..…….22

LCvR. 54.2 (c)…………………………………………………..……………..…22

**Related Appeals**

No. 97-5104 *B. Willis, C.P.A., Inc. v. Public Service Co. of Oklahoma and Burlington Northern and Santa Fe Railway Co*., 182 F.3d 931, 1999 WL 335207 *cert denied* 528 U.S. 1003


No. 98-5122  *B. Willis, C.P.A., Inc. v. Goodpaster*, 183 F. 3d 1231(10th Cir. 1999), *cert denied* 528 U.S. 1046


No. 06-5015 *B. Willis, C.P.A., Inc. v. BNSF Railway Company, Union Pacific Railroad Company and Public Service Co. of Oklahoma*, 531 F.3d 1282 (10th Cir. 2008)

No. 10-5096 *B. Willis, C.P.A., Inc. v BNSF Railway Company and Public Service Co. of Oklahoma*

No. 09-5133 *The Burlington Northern and Santa Fe Railway Company v. Public Service Company of Oklahoma*

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| **WILLIAM T. DICKSON**<br>**Respondent/Appellant**<br>**vs.**<br>**PUBLIC SERVICE COMPANY OF**<br>**OKLAHOMA,**<br>**Movant/Appellee** | **Case No. 12-5062** |

## BRIEF IN CHIEF OF APPELLANT WILLIAM T. DICKSON

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

### DISTRICT COURT JURISDICTION

The District Court lacked jurisdiction to enter the order of March 23, 2011 or the order of March 30, 2012 that is the subject of this appeal.

### COURT OF APPEAL JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 as Appellant appeals from a final Judgment of the U.S. District Court for the Northern District of Oklahoma, on the only claim of Appellee, Public Service Company of Oklahoma, against Appellant William T. Dickson entered on March 30, 2012. Dickson filed a notice of appeal on April 11, 2012.

1

## ISSUES PRESENTED FOR REVIEW

This appeal is from an award of sanctions against William T. Dickson ("Dickson"), the attorney for B. Willis C.P.A., Inc. ("Willis"), the plaintiff in the case below. Before even reaching the merits of the award of sanctions, this Court must address whether the District Court had jurisdiction to consider the purported motion for sanctions before the District Court and whether the actions of the District Court violated due process requirements.

In a prior appeal in this case, Appeal No. 06-5015, this Court asserted that final decisions in the related state condemnation proceeding[1] **did not preclude** Plaintiff/Appellant Willis from prosecuting two claims once they became ripe upon the conclusion of the then pending state appeal dealing only with compensation. However, on remand the District Court held the final decisions in the state condemnation proceeding **did preclude** those claims, a direct contradiction of this Court's opinion and mandate, and then sanctioned Willis' attorney, Dickson, for prosecuting those claims on remand.  The most fundamental issue in this appeal is whether this Court will enforce its opinion and mandate from the prior appeal.  Put another way, were Dickson's actions on remand consistent with this Court's opinion and mandate in Appeal No. 06-5015?

---

[1] Rogers County District Court Case No. C-92-507, *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.*  941 P.2d 995 (Okla. 1997); *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.* 155 P.3d 845 (Okla. App. 2006) *cert denied* 128 S. Ct. 66 (2007).

To justify its ruling, the District Court asserted that all decisions in the state proceeding became final when the appeal of the jury verdict on compensation was dismissed rather than when all issues in the state proceeding other than compensation were decided by a previous appellate decision. This Court must decide if this holding is a direct contradiction of rudimentary Oklahoma eminent domain law, rudimentary appellate law and this Court's prior opinion and mandate. The District Court also held that the cut Public Service Company of Oklahoma ("PSO") excavated beneath its surface easement, in the course of which it removed coal and limestone, was "within the easement" even though PSO explicitly disclaimed any interest in the subsurface minerals in its petition in condemnation, only posted a commissioners' award for "surface and surface rights," and this Court held that Willis could maintain a trespass claim for PSO's excavation beneath its "surface easement." Thus, this Court must decide whether the District Court's ruling in this regard was consistent with this Court's prior opinion and mandate.

The District Court asserted that Willis' claims were barred by the applicable statute of limitations after this Court held that these claims would not become ripe until the appeal in the state condemnation on compensation only was concluded, which occurred on September 9, 2008. Thus, this Court must decide whether it was appropriate to sanction Dickson on the theory that he prosecuted claims after the

statute of limitations had expired even though this Court held those claims were not yet ripe so the Plaintiff could not previously litigate those claims.

Even if the findings of the District Court were not inconsistent with the opinion and mandate of this Court in Appeal No. 06-5015, this Court must determine if the actions of Dickson rose to the level of sanctionable conduct under the standards set by this Court.

Even if this Court finds that Dickson's conduct was of a sanctionable nature, this Court must then decide if PSO is impermissible seeking a double recovery from Dickson after accepting a full release from Willis for all claims Willis had or might have had against PSO, in exchange for a full release from PSO for its claims for all of its costs and attorney fees that it was seeking from Willis.

Even if sanctions were properly awarded, this Court must decide if PSO's attorneys produced adequate billing records to support its claim and whether the District Court acted arbitrarily and capriciously in discounting the amount of attorney fees awarded for block billing.

## STATEMENT OF THE CASE

Willis asserted a state trespass claim and a 42 U.S.C. § 1983 claim for the actions of PSO in seizing the subsurface of a portion of Willis' property with out complying with the requirements of the Oklahoma Constitution and state eminent domain statutes. Willis also asserted the same claims against PSO's contractor,

BNSF Railway Company ("BNSF"), to whom PSO turned over possession of the property pursuant to an Industrial Track and Operating Agreement.

In a prior appeal in this litigation (Case No. 06-5015), this Court held that the final decisions in the related state eminent domain proceeding did not preclude Willis trespass claim for PSO's actions beneath its surface easement and Willis' § 1983 claim to the extent it was based on a theory other than PSO did not have a right to use its surface easement during the state proceedings. However, this Court ruled that these claims would not be ripe until the then pending appeal on compensation in the state condemnation proceeding was concluded.

Willis subsequently dismissed the appeal and the U.S. District Court held that the two claims were now ripe. Subsequently, the District Court ruled that these claims were precluded by the final decisions in the state eminent domain proceeding, a direct contradiction, and, indeed, a repudiation of this Court's opinion and mandate in the prior appeal. PSO then filed a motion for all of its costs and attorney fees from Willis pursuant to 42 U.S.C. § 1988 and 12 O.S. § 940(A). PSO also sought the same fees from Dickson as a sanction pursuant to 28 U.S.C. § 1927. PSO accepted a release from Willis in full satisfaction of its claims against Willis and the District Court then dismissed the sanctions motion against Dickson as moot. PSO promptly filed a motion to reconsider and the District Court promptly held that it would consider that motion as a refiling of a motion

for sanctions. Subsequently the District Court imposed sanctions on Dickson in the amount of $153,606.41 and Dickson filed this appeal.

## STATEMENT OF FACTS

1.     Case 04-CV-163 in the U.S. District Court for the Northern District of Oklahoma began when B. Willis, C.P.A., Inc ("Willis") brought a lawsuit in the Tulsa County District Court against BNSF Railway Company ("BNSF") that BNSF promptly removed to the U.S. District Court for the Northern District of Oklahoma on diversity grounds as Case No. 04-CV-163. (Notice of Removal/Petition Doc. 1)

2.      Subsequently, Willis brought a second lawsuit against BNSF and PSO[2] that was consolidated with Case No. 04-CV-163. (Doc. 40)

3.     Willis was represented in these cases by Dickson pursuant to a contingency fee contract. (Notice of Attorney Lien Doc. 207)

4.     The U.S. District Court granted the defendants a summary judgment on Willis' declaratory judgment claim and dismissed Willis' other claims as unripe. (Order Doc. 79, Order Doc. 86, Judgment Doc. 87) Willis then appealed this ruling to this Court as Appeal No. 06-5015.

---

[2] Union Pacific Railroad Company was also named as an interested party for a declaratory judgment claim, but no relief was sought against it.

5.     While this appeal was pending, the Oklahoma Court of Civil Appeals issued a decision that resolved all issues in the state condemnation proceeding except just compensation. *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.* 155 P.3d 845 (Okla. App. 2006) *cert denied* 128 S. Ct. 66 (2007).  This decision blatantly contradicted the decision of the Oklahoma Supreme Court in a prior appeal in the same case, *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.*, 941 P. 2d 995 (Okla. 1997), which is the leading case on Oklahoma eminent domain law that has been cited in eleven subsequent cases.  Nonetheless, the Oklahoma Supreme Court adopted *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.* 155 P.3d 845 (Okla. App. 2006) *cert denied* 128 S. Ct. 66 (2007) for publication, thereby according it precedential value.

6.     Subsequently, this Court issued its decision in Willis' appeal (No. 06-5015) and held that some of Willis claims were now precluded by the final decisions in the state condemnation action but also held that:

> Final determinations made in the state proceedings do not preclude 1) Willis' state trespass claim to the extent it alleges that PSO wrongfully removed coal and limestone from beneath the surface easement; and 2) Willis' due process/equal protection claim asserted against PSO, to the extent that claim is based upon allegations other than that PSO wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings. These two viable claims are, nevertheless, not yet ripe for adjudication.
> *B. Willis, C.P.A., Inc. v. BNSF Railway Company, Union Pacific Railroad Company and Public Service Company of Oklahoma,* 531 F.3d 1282 (10th Cir. 2008) at 1306.

7

This Court held that the two claims not precluded would be ripe when the state condemnation action concluded. *B. Willis, C.P.A., Inc. v. BNSF Railway Company, Union Pacific Railroad Company and Public Service Company of Oklahoma, supra.* At the time of this ruling, the only aspect of the state condemnation action not concluded was the appeal of the jury award on compensation. *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.* 155 P.3d 845 (Okla. App. 2006) *cert denied* 128 S. Ct. 66 (2007).

7.      On September 9, 2008, in response to a motion filed by Willis, the appeal of the jury award for compensation was dismissed by the Oklahoma Supreme Court and Willis notified the U.S. District Court in Case No. 04-CV-163. (Notice of Related Cases Doc. 91, 92)  On December 30, 2008 the U.S. District Court held Willis' remaining claims in the federal action ripe. (Order Doc. 120.)

8.      On September 15, 2008, the District Court ordered a scheduling conference. (Minute Order Doc. 93.)  A hearing was held on December 17, 2008 before a U.S. Magistrate Judge.  At this hearing the attorney for PSO asked that the Magistrate *sua sponte* dismiss Willis' claims with prejudice. The Magistrate declined to do so but on December 24, 2008 the Magistrate issued a scheduling order that only gave Willis until January 30, 2009 in which to conduct discovery.  (Scheduling Order Doc. 114.)

9.    On October 23, 2008 Willis, in accordance with FRCP 15(a)(2) filed a Motion For Leave to Amend and Add Additional Parties.  (Doc. 96)  The District Court denied this request. (Order Doc. 113)

10.   Shortly there after Willis discovered that trains were being operated through the cut PSO had excavated beneath its surface easement and Wills filed a motion for an injunction to stop such usage on December 30, 2008.  Willis did not seek an *ex parte* TRO but did request an expedited hearing for a preliminary injunction. (Motion for Preliminary Injunction Doc. 116.)   The matter was referred to a magistrate who held a hearing on March 11, 2009 and did not issue a Report and Recommendation ("R&R") until May 26, 2009.   (Report and Recommendation Doc. 158)  The District Court adopted the R&R on September 11, 2009 denying the request for an injunction.  (Order Doc. 167)

11.   Willis served PSO with discovery requests that included requests for the details of the economic value to PSO of receiving coal shipments through the cut PSO had excavated beneath its surface easement across Willis' property.  PSO stipulated that this value was $5,000,000.00 per year just to PSO but refused to provide any details and/or records that would support this stipulation.   When Dickson explained this refusal to the U.S. Magistrate Judge at a hearing on Willis' motion for an injunction, the Magistrate immediately instructed Dickson to file a

9

motion to compel which would necessitate a brief on the measure of damages for Willis' claims which would demonstrate PSO's exposure to the Court.

12.    Willis filed a brief (Motion to Compel  Doc. 155.) using the Court's ECF system on the evening of Monday, March 16, 2009 that demonstrated that, given PSO's stipulation, PSO had exposure to Willis in the amount of $101,250,000.00. On the morning of Tuesday, March 17, 2009 the Court entered a stay order that remained in effect for six (6) months. (Minute Order Doc. 156.)  Subsequently, the Court issued an order sealing the brief Dickson had filed.  (Modification to Motion to Compel Doc. 155)

13.    During the time the case was stayed the trial date under the scheduling order in effect was approaching and the Court entered an order striking the trial date (Minute Order Doc. 166.), but did not enter a new scheduling order in spite of the requirements of Federal Rule of Civil Procedure Rule 16 (b).  Willis subsequently filed two motions for a scheduling conference (Motion for Hearing Doc. 190, Motion for Scheduling Conference Doc. 192) but the Court refused to hold a scheduling conference or enter a scheduling order as required by Federal Rule of Civil Procedure Rule 16 (b).

14.    On July 28, 2010 the Court entered its dispositive rulings (Opinion and Order Doc. 193, Judgment Doc. 194, Judgment Doc. 195) and held that Willis' claims against PSO **were precluded** by the final decisions in the state

10

condemnation proceeding despite the fact that the opinion of this Court, which the U.S. District Court had a mandate to follow, held that the final decisions in the state court proceeding did **not preclude** Willis' claims.  The case was terminated that day and Willis promptly filed an appeal to this Court as Appeal No. 10-5096. (Notice of Appeal Doc. 196)

15.     PSO originally filed a motion styled *Defendant Public Service Company of Oklahoma's Motion for Attorney Fees and Costs and Brief in Support* (Doc. 203) on August 11, 2010.  This motion sought costs and attorney fees from Willis under 12 O.S. §940(A) and 42 U.S.C. §1988 and was filed within 14 days of the Court's judgment pursuant to F.R.C.P. 54(d).  PSO's motion also sought attorney fees as a sanction against Dickson under 28 U.S.C. §1927.  PSO sought its attorney fees from the filing of the complaint on August 18, 2004 on the grounds that the complaint should never have been filed and that Dickson should be "punished" for doing so.

16.     Willis' appeal was dismissed for failure to prosecute on December 16, 2010 (Decision Doc. 231) after Willis failed to have substitute counsel enter an appearance after Dickson withdrew.  Dickson withdrew as the attorney of record for Willis in the District Court case (04-CV-163) upon the entry of substitute counsel on February 28, 2011 (Attorney Appearance Doc. 246), at which point Dickson's only connection to that case was PSO's pending motion for sanctions

against him.  On March 23, 2011 Willis and PSO entered a Joint Stipulation of Dismissal With Prejudice (Stipulation of Dismissal Doc. 261) which ended Willis' connection to the case.    The same day the District Court entered an order (Order Doc. 262) that dismissed PSO's motion for sanctions (Doc. 203) against Dickson. At that point, Dickson no longer had any connection to the case and, in fact, there was no longer any case before the Court.

17.    PSO then filed a Motion to Reconsider the Court's Order (Doc. 263).  The same day the District Court entered an order (Doc. 264.) that the District Court would consider the Motion to Reconsider the Court's Order (Doc. 263) filed by PSO as a refiling of its Motion for Sanctions that the Court dismissed in Order Doc. 262.

18.    At a hearing held March 30, 2011 PSO's attorney stated that PSO filed its motion for sanctions because it did not want Dickson to be able to file his own lawsuit against PSO.  At a hearing on January 12, 2012, both the Court and PSO made it clear that PSO was not seeking compensation for excess legal costs but rather to pressure Dickson to "renounce" his claims against PSO. (Aplt. Apdx at 82, 93)  In a pleading (Objection to the Exhibit of William T. Dickson and Brief in "Support Doc. 284), PSO stated, "At that conference, Mr. Dickson was again given the opportunity to renounce further litigation against PSO and its attorneys in return for withdrawal of the motion for sanctions, but he declined."

19.    In a telephone conference held December 2, 2011, the U.S. Magistrate Judge

announced that he would recommend imposing sanctions for five (5) actions of

Dickson. (Minutes of Proceedings Doc. 273)  These five actions were:

> 1. Filing a motion for leave to amend and add additional parties (Doc. 96);
> 2. Filing a motion for injunctive relief (Doc. 116);
> 3. Fling a motion for a partial summary judgment (Doc. 127) that the Court asserted was based in based in part on 42 U.S.C. § 1983 claims previously rejected in state court;
> 5.  Filing a motion for a partial summary judgment (Doc. 127) that the Court asserted was based in based in part on 66 O.S. § 7; and
> 4. Sending a letter "on behalf of Willis" stating that Dickson would not consider settlement terms.

20.    On January 12, 2012, a hearing was held on the amount of fees the

Magistrate would recommend be awarded.  (Minutes of Proceedings Doc. 282)

The Court then ordered a second settlement conference, which was held on

February 27, 2012 before an adjunct settlement judge.  (Minute Order Doc. 285)

On March 12, 2012 Dickson filed a Petition for Writ of Prohibition in this Court as

Case No. 12-5039 seeking to prohibit the District Court from proceeding further on

the motion for sanctions against Dickson.  On March 14, 2012 the U.S. Magistrate

Judge issued a 24 page Report and Recommendation ("R&R") recommending that

the Court impose sanctions against Dickson in the total amount of $153,606.41.

(Report and Recommendation Doc. 291.)   On March 28, 2012 at 3:03 P.M.

Dickson filed a 22 page objection to the R&R (Objection to Report and

Recommendation Doc. 293.) and on March 30, 2012 at 10:05 A.M., the U.S.

District Judge issued an order that stating that he had conducted a de novo review of and given thorough consideration to the 24 page R&R and 22 page objection and was granting the sanctions recommended by the U.S. Magistrate. (Order Doc. 294.)

21.    On April 11, 2012 Dickson filed a notice of appeal.  (Notice of Appeal Doc. 295)

## SUMMARY OF ARGUMENT

The District court imposed sanctions on Dickson based on a purported motion for sanctions filed eight months after the final judgment in the case, after the appeal was dismissed, after Dickson withdrew form the case with leave of the Court, and after the parties entered into a joint stipulation of dismissal.  In fact, no motion for sanctions was before the Court.  As a result, the District Court was without jurisdiction to enter the order granting a non existent motion for sanctions.

In addition, the procedures leading to the order imposing sanctions violated a number of due process requirements rendering the District Court's order void. Among these due process violations was the fact that no *de novo* review was conducted of the Report and Recommendation ("R&R") by the District Judge. Dickson filed objections to the R&R at 3:30 P.M. on March 28, 2012 and the District Court issued an order adopting the R&R at 10:05 A.M. on March 30, 2012. During the entire interval the District Court was conducting a jury trial.

The District Court based its imposition of sanctions on five actions of Dickson that the Court held were vexatious and in bad faith. All but one of these actions consisted of filing pleadings on remand to litigate the two claims this Court held Willis could litigate when ripe. These pleading were a motion to amend the petition to add additional parties, a motion for an injunction to enjoin an ongoing trespass beneath a surface easement, and a motion for partial summary judgment. These claims were filed in good faith in accordance with this Court's opinion and mandate in Appeal No. 06-5015. As a result, the actions of the District Court were in violation of this Court's opinion and mandate in Appeal No. 06-5015.

Completely apart from of this Court's opinion and mandate, the pleadings Dickson filed were all based on solid legal authority so the District Court had no basis to impose sanctions and its was reversible error to do so.

The final basis cited by the District Court was the assertion that Dickson sent a letter on behalf of his client to PSO's attorneys declining to engage in settlement discussions. This assertion by the District Court is an utter fabrication as the letter clearly states that Dickson was only speaking for himself in accordance with Oklahoma attorney lien law and was not speaking for his client. As a result, the imposition of sanctions on this basis was reversible error.

Because PSO accepted good and valuable consideration from Willis in satisfaction of its claim for all of attorney fees and costs against Willis, when the

District Court gave PSO a judgment against Dickson for a portion of those same fees and costs, it was permitting PSO a double recovery, which is reversible error.

Finally, the billing records PSO produced to support its claim for attorney fees consisted of "block billing." The District Court arbitrarily reduced the amount claimed by 10% for block billing and 5% for entries unrelated to the recommended sanction. This an arbitrary and capricious act by the District Court to allow PSO to collect attorney fees when its attorneys had failed to keep proper billing records. This was an abuse of discretion and reversible error.

## STANDARD OF REVIEW

Any statutory interpretation or other legal analysis underlying a district court's decision concerning attorney fees is reviewed *de novo*. *Steinert v. Winn Group, Inc.* 440 F.3d 1214, 1221 (10th Cir. 2006). Where an award of sanctions depends on the resolution of a purely legal issue, review is *de novo*. *Hamilton v. Boise Cascade Exp*. 519 F.3d 1197, 1202 (10th Cir. 2008) citing *Roth v. Green,* 466 F.3d 1179, 1187 (10th Circuit 2006).

# ARGUMENT

## I. The District Court Lacked Jurisdiction To Consider a Motion For Sanctions.

PSO originally filed a motion for sanctions against Dickson attorney pursuant to 28 U.S.C. § 1927 that states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Section 1927 targets the vexatious and unreasonable multiplication of proceedings. Sanctions under this section are levied to compensate the victims of **dilatory** practices. *Hamilton v. Boise Cascade Exp*. 519 F.3d 1197, 1201, 1203 (10th Cir. 2008). Sanctions under §1927 "are levied to compensate the victims of dilatory practices, not as a means of punishment…Yet the text of §1927…indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders." *Hamilton* at 1203, 1205. "We recognize that the Conference Committee's report on the 1980 amendment to § 1927 indicated that the amendment was made, in part at least, "to deter unnecessary **delays** in litigation."" *Hamilton* at 1206. (Emphasis added.)

In *Steinert v. Winn Group, Inc.* 440 F.3d 1214, 1234, 1225 (10th Cir. 2006) the Tenth Circuit made it clear that § 1927 liability could not be imposed for

initiating meritless litigation and because § 1927 covers only the multiplication of "proceedings in any case," the unambiguous statutory language necessarily excludes the complaint that gives birth to the proceedings as it is not possible to multiply the proceedings until after those proceeding have begun.

However, PSO's original motion (Doc. 203), which the Court dismissed, sought all of PSO's attorney fees from the filing of the complaint against PSO and asserted on page 3:

> Willis' counsel, Mr. Dickson, is responsible for "unreasonably and vexatiously" multiplying the proceedings by repeatedly asserting claims after they have been rejected in this and other courts…

On page 16 of its original motion PSO stated:

> The history of the present case (discussed in small part above) is such that the litigation conduct of Willis and its attorney in filing multiple lawsuits in federal court and multiple appeals in both state and federal court repeatedly making the same or similar allegations and the same or similar claims can only be described as "multipl[ying] the proceedings in [this] case unreasonably and vexatiously" in violation of § 1927.

On page 11 of a brief in support of sanctions (Doc. 266) PSO asserted:

> Mr. Dickson's conduct in pressing claims in this case which were either not ripe or already precluded by previous cases in this or other court or which were plainly barred by the applicable statute of limitations is "objectively unreasonable" and ***should be punished***. (Emphasis added.)

As can readily be seen, what PSO was really seeking was not compensation for excess legal fees incurred because of dilatory practices by Dickson but a punitive sanction as provided by FRCP 11 for filing an allegedly frivolous lawsuit.

*Olcott v. Delaware Flood Co*., 327 F.3d 1115, 1123 (10th Circuit 2003) held that, "A district court retains jurisdiction to impose and enforce sanctions until the court enters a final judgment."  Under this holding, this Court lost its jurisdiction to entertain PSO's motion against Dickson on July 28, 2010 when the case terminated.  However, *Steinert v. Winn Group, Inc*., 440 F.3d 1214 (10th Cir. 2006) held that §1927 sanctions are not untimely if sought or imposed after final judgment but added:

> With that said however, resort to §1927 should not be unnecessarily or unreasonable delayed.

Thus, even though what PSO really sought was a  punitive sanction as provided by FRCP 11, it was compelled to pretend to be filing a motion for sanctions under 28 U.S.C. § 1927 for the court to have any colorable claim of jurisdiction.  However, on March 23, 2012 the District Court entered an order (Doc. 262) that dismissed PSO's motion for sanctions (Doc. 203) against Dickson. By this time, Dickson had withdrawn from the case with permission of the Court (Motion to Withdraw Doc. 228, Order 229), PSO and Willis had entered into a settlement agreement under the supervision of the Court (Stipulation of Dismissal

19

Doc. 261), and the Court's final judgment had been entered eight months previously. (Doc. 193, 194, 195)

PSO then filed a Motion to Reconsider the Court's Order (Doc. 263) but the Court did not vacate its order (Doc. 262) dismissing PSO's original motion for sanctions.  Instead, the Court announced it would proceed as if PSO had filed another Motion for Sanctions on March 23, 2012.  (Doc. 264)

However, this make believe motion for sanctions, which did not really exist, would have been filed eight months after the Court's final judgment, after the appeal terminated, after Dickson had withdrawn from the case with leave of the Court, and with no case, controversy or proceeding of any kind before the Court.

As a result, the Court was without jurisdiction to entertain PSO's fictitious motion.  *Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006); *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1123 (10th Circuit 2003); *Overnite Transp. Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789, 792-793 (7th Cir. 1983). Consequently, the judgment entered by the Court is void for lack of jurisdiction. *U.S. v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004).

## II.    The Actions of the District Court Violate the Requirements of Due Process.

In *Bratcher v. Bray-Doyle Independent School District No. 42 of Stephens Count, Oklahoma*, 8 F.3d 722, 724 (10th Cir. 1993) this Court quoted from *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991):

> De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court. Where circumstances indicate that the district court has not conducted such review following timely objection to the magistrate's report, the case must be remanded for compliance with the statute [i.e. 28 U.S.C. § 636(b)(1)].

On March 28, 2012 at 3:03 P.M. Dickson filed a 22 page objection (Doc. 293) to the R&R (Doc. 291.) and on March 30, 2012 at 10:05 A.M., the U.S. District Judge issued an order (Doc. 294) that stating that he was granting the sanctions recommended by the U.S. Magistrate after having conducted a "*de novo* review*" of and given "thorough consideration" to the 24 page R&R, the 22 page objection and presumably the 42 pages of billing records submitted by PSO's attorneys.

However, according to the Court's docket, beginning at 8:30 A.M. on March 28, 2012., five hours before Dickson filed his objection to the R&R, and continuing until the next week, the District Court was conducting a jury trial in Case No. 10-CV-474-TCK-PJC, styled *Brambi v. GEICIO.*

There is simply no way the statutorily and constitutionally required *de novo* review could ever have been conducted. As a result, the proceedings in the District Court violated due process of law.

As previously noted, on March 23, 2012 the District Court entered an order (Order Doc. 262) that dismissed PSO's motion for sanctions (Motion for Attorney Fees and Costs Doc. 203) against Dickson. PSO then filed a Motion to Reconsider

the Court's Order (Motion to Reconsider Doc. 263) but the Court did not vacate its order (Order Doc. 262) dismissing PSO's original motion for sanctions.  Instead it entered an order (Order Doc. 264) that stated that it would proceed as if PSO had filed a motion for sanctions once again and subsequently entered an order (Order Doc. 294) granting the second "motion for sanctions" that was never really filed.

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192 (10th Cir. 2007).  LCvR.[3] 7.2 (e) states in part:

> Each party opposing a motion shall file with the Court Clerk and serve upon all other parties a response within twenty-one (21) days the motion was filed…

LCvR. 54.2 (c) states in part:

> Response in opposition to the allowance of attorney fees must be filed within twenty-one (21) days the motion for attorney fees is filed.

FRCP 59 (d) states:

> (d) NEW TRIAL ON THE COURT'S INITIATIVE OR FOR REASONS NOT IN THE MOTION. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. **After giving the parties notice and an opportunity to be heard**, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.  (Emphasis added.)

When PSO filed its Motion to Reconsider the District Court's order dismissing its motion for sanctions, before the Court took action Dickson was

---

[3] LCvR refers to the local civil rules of the Northern District of Oklahoma.

entitled to respond and had until April 13, 2012 to do so. However, the Court,
without allowing Dickson to be heard, ruled that while it would not vacate its order
dismissing the motion for sanctions against Dickson, it would proceed as if there
had been another motion for sanctions filed even though no such motion had been
filed and Dickson would have to appear in Court to defend against this unseen, non
existent motion in only seven days.

The actions of the Court clearly constituted a violation of due process of
law. A decision that is rendered without due process is void. *Brown v.
McCormick*, 608 F.2d 410, 414 (10th Cir. 1979), *In Re Four Seasons Securities
Laws Litigation*, 502 F.2d 834, 842 (10th Cir. 1974).

## III. The Actions of the District Court Violate the Opinion and Mandate of This Court in Appeal No. 06-5015.

## A. The holding of this Court in Appeal 06-5015.

The rule that a lower court must follow the decision of a higher court at an
earlier stage of the case applies to everything decided either expressly or by
necessary implication. *Cherokee Nation v. State of Oklahoma*, 461 F.2d 674 (10th
Cir. 1972).

The opinion of this Court in Appeal No. 06-5015 shows that the settled law
of the case that the District Court was required to follow is:

      1. All PSO condemned and acquired was a surface easement.

2.  All Willis could litigate in the state condemnation proceeding was the right to take the surface easement and the compensation due for that surface easement.

3.  At the time this Court issued its opinion, the only thing still being litigated in the pending state appeal was compensation for the surface easement.

4.   All issues in the condemnation proceeding other than compensation for the surface easement had already been finally determined in the state proceeding prior to this Court's opinion in Case No. 06-5015.

5.   These final determinations did not preclude Willis' claim for trespass beneath the surface easement and § 1983 claim.

6.  Willis' claim for trespass beneath the surface easement and § 1983 claim did not become ripe until the state appeal terminated.

Repeatedly this Court in Appeal No. 06-5015 held that all PSO acquired was a surface easement and that Willis could litigate its two viable claims once the state appeal on compensation concluded.  On page 3:

> …because the state **proceedings challenging the amount of compensation awarded for <u>the easement</u> are still pending,** those claims are not yet ripe for adjudication.

On page 25:

> These two exceptions are 1.) Willis' due process/equal protection claim, to the extent that claim is based upon a theory other than Willis rearguing that PSO unlawfully possessed and used **<u>the easement</u>** during the state condemnation proceeding, and 2.) Willis' trespass claim alleging PSO removed limestone and coal from **<u>below the surface easement</u>**.

On page 36:

24

The state condemnation proceedings do not, however, preclude Willis from pursuing its **trespass claim** to the extent that it alleges that PSO wrongfully removed limestone and coal from **underneath PSO's surface easement** across Willis' property.

On page 41/42:

> **Final determinations** made in the state proceedings do **not preclude** 1) Willis' state **trespass** claim to the extent it alleges that PSO wrongfully removed coal and limestone from **beneath the surface easement**; and 2) Willis' due process/equal protection claim asserted against PSO, to the extent that claim is **based upon allegations other than** that PSO wrongfully possessed and used the **easement** across Willis' property during the state condemnation proceedings. These two viable claims are, nevertheless, not yet ripe for adjudication.

Emphasis added.

## B.    The Actions the Court Found Sanctionable.

## 1.    Seeking Leave to Amend to Add Additional Parties.

When Willis filed the complaint in Case No. 04-CV-640 it only asserted claims against PSO and BNSF, two corporations. However, since a corporation is only a legal entity, it cannot act by itself. It can only act through its officers, employees, and agents, and these acts are attributable to the corporation under principles of agency. *Burlington Northern & Santa Fe Railway Company v. Phillips Petroleum Company*, 164 F. Supp. 2d 1272, 1276 (N.D. Okla. 2001). However, the officer, employee, or agent who actual commits or supervises a tortious act is liable as well as the corporation. *Oklahoma Federated Gold and*

*Numismatics, Inc. v. Blodgett,* 24 F.3d 136 (10th Cir. 1994); *McClelland v. Watling*

*Latter Company*, 729 F.Supp. 1316 (W.D. Okla. 1990).  Under the opinion of this

Court in Appeal No. 06-5015, the claims Willis had asserted against PSO and

BNSF in 2004 became ripe on September 9, 2008, and only then also became ripe

against the agents of the corporation who committed the acts giving rise to the

claims and PSO's corporate parent that supervised and directed those agents.

The R&R asserts as its first basis for recommending sanctions that Dickson

filed Doc. 96 seeking leave to add additional parties.  On page 12 the R&R asserts:

> The undersigned concludes that there was no good faith basis for
> Dickson's request to add PSO's parent company and its litigation
> counsel.

Why the U.S. Magistrate would reach such a conclusion is unknown to

Dickson.  As Dickson explained at the hearing on December 17, 2008, (Aplt.

Apdx. at 75, 76-78) as a result of American Electric Power Company's absorbing

PSO's former corporate parent and restructuring of the company, PSO was close to

being a corporate shell and AEP was the real party in interest to whom PSO's

attorneys reported.  As a result, there was nothing improper about seeking to

amend to add the real party in interest.

Willis filed its motion to add additional parties to assert the same claims

against PSO's corporate parent and the agents of the corporation, PSO's attorneys

who actually subverted court proceedings, only 44 days after Willis' two remaining viable claims became ripe against anyone, as held by this Court.

The District Court has sanctioned Dickson for relying on the opinion and mandate of this Court after the case was remanded back.

## 2.    Seeking an Injunction

Dickson was sanctioned for filing Doc. 116 seeking an injunction against BNSF, which the R&R asserted was no longer a party to the case.

Injunctions can operate against parties and/or people within the parties' control, or in active participation with a party in the case.  Fed. R. Civ. P. 65(d) (2) (A)-(C).

This Court held in its opinion in Appeal No. 06-5015 that BNSF was in privity with PSO and that Willis could maintain a trespass action for PSO's excavation beneath its surface easement.  PSO excavated a deep cut on Willis' property, placed a track at the bottom of that cut and then turned possession and control of that track over to BNSF pursuant to the Industrial Track & Operating Agreement on March 16, 1995.   If PSO was trespassing beneath its surface easement when it excavated the cut, then BNSF was also trespassing as PSO's contractor, not only every time it ran a train through the cut PSO excavated beneath its surface easement, but as long as it operated the track there pursuant to the Industrial Track & Operating Agreement.  Subsequent to the filing of the

motion, it was discovered that Union Pacific had been operating trains through the cut as PSO's contractor.

On page 13 the R&R asserts that it was clear to the U.S. Magistrate that Dickson purpose in seeking the injunction was twofold: (1) an injunction against BNSF would prevent PSO from using the easement, since BNSF was the only railroad that had access to PSO's rail spur; and (2) if it appeared to Dickson that his request for an injunction was going to be denied, he could file yet another motion for preliminary injunction as to PSO and/or Union Pacific.

Why these were clear to the U.S. Magistrate is unclear because neither is true. The parameters of the injunction sought were narrow so as to apply only to that portion of the track across Willis' property that was located off of PSO's surface easement. Moreover, as Dickson made clear at the injunction hearing held March 11, 2009 (Apl. Apdx. At 79, 80-81), Dickson and Willis did not discover until after the injunction motion had been filed that PSO was having Union Pacific run trains over the track. As a result, Dickson stated he anticipated seeking an injunction against PSO and Union Pacific even if the injunction against BNSF issued since BNSF controlled the dispatching but Union Pacific was apparently running the trains over the portion of the track off of the easement.

Since the Tenth Circuit held that Willis could pursue its trespass claim for PSO's excavation beneath its surface easement, Willis seeking an injunction that

would apply only to the portion of the track that was located off of the surface easement (Aplt. Apdx at 94, 95) was not in violation of the opinion and mandate of this Court. In contrast, the order of the District Court imposing sanctions on Dickson is in violation of the opinion and mandate of this Court.

**3.    Motion for Partial Summary Judgment.**

This Court's opinion in Appeal No. 06-5015 stated that Willis could litigate two claims once they became ripe. After the District Court held those two claims to be ripe Willis attempted to litigate them and in the course of doing so filed a motion for partial summary judgment. (Doc. 127, 128) The District Court has now imposed sanctions on Dickson for filing that motion.

Page 14 the R&R (Doc. 291) quotes from a prior R&R that issued in response to the motion for injunctive relief (Doc. 116). On page 15 the current R&R states that, "This language establishes that Dickson not only ignored the Tenth Circuit's directions, but also that he reasserted the very same arguments that he had previously asserted in the state court action."

Whether Dickson ignored the Tenth Circuit's directions is determined not by the language of the prior R&R but by the language in this Court's opinion in Appeal No. 06-5015. That opinion made it clear that Willis had two viable claims that it could litigate once the state appeal dealing only with compensation was

concluded.  Once the state appeal was dismissed, Willis' remaining claims became ripe as the District Court held in Doc. 93.

The actions of the District Court in sanctioning Dickson for filing a motion for partial summary judgment are a direct violation of the opinion and mandate of this Court in Appeal No. 06-5015.

**4.     Summary Judgment With Respect to 66 O.S. § 7.**

On page 15 the R&R asserts that Dickson first argued that Willis was entitled to summary judgment because PSO did not file a condemnation proceeding under Okla. Stat. tit. 66, § 7.   The R&R then states:

> Dickson's briefing does not contain a good faith basis on which to assert the argument identified above…The assertion of this argument was unreasonable and vexatious and multiplied these proceedings, thus forming the forth basis for the undersigned's recommendation that Section 1927 sanctions be imposed against Dickson.

The R&R and the District Court's original judgment completely misconstrued the theory asserted by Willis.  Willis never asserted "that PSO was required to file a separate condemnation proceeding under Section 7."

This Court held in Appeal No. 06-5015 that:

> Final determinations made in the state proceedings do not preclude 1) Willis' state trespass claim to the extent it alleges that PSO wrongfully removed coal and limestone from **beneath the surface easement**; (Emphasis added.)

Thus, it is the settled law of the case that all PSO acquired in the state condemnation proceeding was a surface easement and that when PSO excavated

the cut on Willis' property, during which it removed coal and limestone, PSO was "beneath" the surface easement.

There is no question that PSO is a state actor, as in *Public Service Company of Oklahoma v. Willis*, 155 P.3d 845 (Ok. Civ. App. 2007) the Court stated:

> ¶10 Any governmental body subordinate to the State**,** which would include PSO (17 O.S.2001 § 151(c)), may not exercise a power of eminent domain in the absence of statutory authority. (Emphasis added.)

Since there was no dispute that PSO had excavated a cut on Willis' property beneath its surface easement, quite reasonably Willis filed for a summary judgment on both a state trespass claim and a § 1983 claim against PSO for invading the subsurface beneath its surface easement. The summary judgment claim Dickson filed on Willis' behalf was based on the opinion and mandate of this Court.

What the District Court did is sanction Dickson for relying on the opinion and mandate of this Court after the case was remanded back.

## IV.    The Actions of Dickson Did Not Constitute Sanctionable Conduct.

The Tenth Circuit has stated:

> We recognize the importance of ensuring that § 1927 "in no way will dampen the legitimate zeal of an attorney in representing his client." *Braley v. Campbell*, 832 F.2d 1504, 1512(10th Cir. 1987).

> The power to assess costs against an attorney under § 1927, however, is a power that must be strictly construed and utilized only in instances evidencing a "serious and standard disregard for the orderly process of justice." *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th 'Cir. 1985)

31

A party acts in bad faith only when the claim brought "is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."* * * the standard for bad faith awards is stringent, for "[o]therwise those with colorable, albeit novel, legal claims would be deterred from testing those claims in a federal court." *Sterling Energy, Ltd v. Friendly National Bank*, 744 F.2d 1432, 1435 (10th Cir. 1984) quoting *Browning Debenture Holders' Committee v. DASA Corp*., 560 F.2d 1078, 1088 (2d Cir. 1977)

The mere fact the plaintiff did not prevail before the district court does not necessarily imply that its conduct was "vexatious" or "wanton." The reviewing court must resist the temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, the action must have been wholly unreasonable and without proper foundation. In other words, even where the law or facts appear questionable at the outset, a party may have a perfectly legitimate ground for bringing the suit. See generally *Christainburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Further, bad faith requires more than a mere showing of a weak or legally inadequate case, and the exception is not invoked by findings of negligence, frivolity, or improvidence. *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1488 (10th Cir.1984). Hence, it is not surprising that attorneys' fees are awarded only when there is "clear evidence" that challenged actions are taken entirely without color and are pursued for reasons of harassment or delay. *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

*Autorama Corp. v. Stewart*, 802 F.2d 1284, 1288 (10th Cir. 1984)

Completely apart from the opinion and the mandate of this Court in Appeal No. 06-5015, there is utterly no basis to assert that the actions of Dickson cited by the District Court rise to the level of sanction conduct under the standards established by this Court.  In every case, Dickson had a sound legal basis for the pleadings he filed.

**A.    Seeking Leave to Amend to Add Additional Parties.**

On page 12 the R&R found Dickson should be sanctioned for seeking leave to add additional parties.  Dickson did not file actions against PSO's corporate parent and counsel.  Pursuant to FRCP 15 (a) (2), Dickson filed a motion for leave to amend to add additional parties.  The District Court has now sanctioned Dickson for complying with the Federal Rules of Civil Procedure.

The decision of this Court in Appeal No. 06-5015 states unequivocally, "These two viable claims are, nevertheless, not yet ripe for adjudication."

The District Court has ruled (Doc. 120) that Willis' trespass claim and claim under 42 U.S.C. § 1983 became ripe as a result of the termination of the state condemnation preceding that occurred on September 9, 2008.

Ripeness is a justiciable doctrine that is drawn from Article III limitations on judicial power.  *Nat. Park Hospitality v. Dept. of Interior*, 123 S.Ct. 2026, 2030, 538 U.S. 803 (2003).  See also Doc. 49, Page 20.  Since the claims did not become ripe until September 9, 2008, they could not possibly be time barred against anyone because no court had jurisdiction to hear the claims before that date.

Under Oklahoma law, a statute of limitations begins to run when a cause of action accrues, and a cause of action accrues at the time when a litigant first could have maintained his action to a successful conclusion. *Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368 (Okla. 1980)

Since Willis' § 1983 for subversion of the judicial process against PSO did not be come ripe until September 9, 2008, as held by District Court, they did not become ripe against AEP and PSO's counsel until that same date. Willis sought leave to add these parties to the existing lawsuit only 44 days after the claims against them became ripe.

## B.    Seeking an Injunction

Dickson was sanctioned for seeking an injunction against BNSF, which the R&R asserted was no longer a party to the case. (See page 13 of the R&R.)

Injunctions can operate against parties and/or people within the parties' control, or in active participation with a party in the case. Fed. R. Civ. P. 65(d) (2) (A)-(C). This Court in Appeal No. 5015 held that PSO and BNSF were in privity as a result of the Industrial Track and Operating Agreement between them. Moreover, a landowner is entitled to seek an injunction to stop a continuing trespass. *Angier v. Mathew Exploration Corp*., 905 P2d 826 (Okl. App. 1995). As a result, there was a clear legal basis for seeking to enjoin BNSF.

## C.    Motion for Partial Summary Judgment.

Dickson was sanctioned by the District Court for filing a motion for partial summary judgment on liability. On page 15 the R&R states that, "This language establishes that Dickson…reasserted the very same arguments that he had previously asserted in the state court action."

34

The final state appeal Willis dismissed was only over the compensation for PSO's surface easement.  In *State ex rel Dept. of Transp. v. Mehta*, 180 P.3d 1214 (Okla. App. 2008) at ¶ 21 the Court stated:

> ("[W]hen any question concerning the right to take by condemnation is raised [by exception], it must be finally determined judicially, prior to a final determination of any question concerning the amount of damages.") This reinforces the principle that all issues, except just compensation…should be resolved prior to the jury trial."

All issues in the state proceeding other than compensation were finally decided in the previous appeal, *Public Service Company of Oklahoma v. Willis*, 155 P.3d 845 (Ok. Civ. App. 2007), as held by this Court.  All decisions in the state condemnation case other that compensation were already final when this Court ruled in Appeal No. 06-5015.   Moreover, the issues that Dickson asserted in the District Court in this case on behalf of his client could not have been litigated in the state condemnation proceeding.  In *Public Service Company v. B. Willis C.P.A., Inc.*, No. 90569 (Unpublished) at ¶6[4] the Court stated:

> As a corollary, the courts have said that questions unrelated to public use and necessity of the taking or the value of the condemned property are beyond the jurisdictional power of the trial court in a condemnation case.

---

[4] A copy of this decision is found at Doc. 37-4, Page 18 of 29.  This decision is the settled law of the case in the state condemnation proceeding.  *North Side State Bank v. Board of County Com'rs of Tulsa County*, 894 P.2d 1046 (Okla. 1994).

At N. 6 on page 15, the R&R asserts that Dickson could have at a bare minimum have withdrawn his arguments as to his summary judgment briefing after the Court adopted an earlier R&R.  (Doc. 158)  This completely ignores the fact that the earlier R&R was in response to a motion for a preliminary injunction.  The United States Supreme Court in the case of *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834 (1991) set forth the effect of preliminary rulings on injunctive relief:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.  Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.  A party thus is not required to prove his case in full at a preliminary injunction hearing***and **the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits…** (Emphasis added.)

In the case of *City of Chanute, Kan. v. Williams Natural Gas Co*., 955 F.2d 641 (10th Cir. 1992) this Court held that the fact the Plaintiff-Appellants prevailed at the preliminary injunction stage was not determinative in a summary judgment proceeding.  In that case the Plaintiffs obtained a temporary injunction and subsequently lost when a motion for summary judgment was granted to the Defendant-Appellee.

The District Court clearly understood this concept as in the order (Doc. 167) adopting the earlier R&R the Court noted, "…there is no question that Plaintiff is

36

**currently** unable to show 'actual success on the merits"…"   (Emphasis added.) Obviously, the Court was contemplating that at a later stage of the proceedings the Plaintiff might show actual success on the merits.   Thus, Dickson was not obligated to withdraw these arguments when subsequently filing for a summary judgment and, in fact, needed not to withdraw them to preserve them for appeal.

**D.      Summary Judgment With Respect to 66 O.S. § 7.**

On page 15 the R&R asserts that Dickson first argued that Willis was entitled to summary judgment because PSO did not file a condemnation proceeding under Okla. Stat. tit. 66, § 7.   The R&R then states:

> Dickson's briefing does not contain a good faith basis on which to assert the argument identified above…The assertion of this argument was unreasonable and vexatious and multiplied these proceedings, thus forming the forth basis for the undersigned's recommendation that Section 1927 sanctions be imposed against Dickson.

The litigation between Willis and PSO began when PSO filed a petition in condemnation for a **surface** easement across Willis' property in 1992.   The reason PSO only petitioned for a surface easement is easy to understand.   As pled in Willis' complaint (Aplt. Apdx. at 58, ¶¶11-27) and shown by PSO's own documents (Aplt. Apdx. at 96), at the time PSO filed the state condemnation action stating it had found a need to build, PSO had no intention of actually building a railroad.   PSO concluded it could achieve its twin objectives of "appearing to build

a rail spur" and blocking development by condemning a surface easement only and, thus, there was no need to condemn and pay for the subsurface.

Subsequently, PSO decided to actually build a rail line (Aplt. Apdx. at 100) and discovered that on the Willis property it would have to make a deep cut approximately 500 feet long.  (Aplt. Apdx. at 94, 95)

66 O.S. § 7 grants the right to make cuts on a railroad right of way during the original construction and specifies the procedure:

> Fourth. To lay out its road, not exceeding one hundred (100) feet in width, either within or without this state, and to construct the same; and for the purpose of **cuttings and embankments** and of obtaining gravel or other material to take such land as may be necessary for the proper construction, operation and security of the road…**making compensation therefor as provided by law for lands taken for the use of the corporation.** (Emphasis added.)

When there is a conflict between two statutes, one specific and one general, the statute enacted for the purpose of dealing with the subject matter controls over the general statute.  *Phillips v. Hedges,* 124 P.3d 227 (Okla. 2005). When the legislature enacts a statute, it is presumed that they have not done a vain and useless act.  *Public Service Co. of Oklahoma v. Northeastern Oklahoma Electric Coop., Inc.* 49 P.3d 80 (Okla. 2002).

As the Oklahoma Supreme Court noted in *Board of County Com'rs of Creek County v. Casteel*, 522 P.2d 608, 611, 612 (Okl. 1974):

> Condemnation is a special proceeding recognized as such by the Oklahoma Constitution. Since condemnation is in a procedural category of its own, the legislature has passed **special statutes** for the just and orderly functioning of the court when hearing these special proceedings. The procedural requirements set forth for condemnation cases in the statutes are reasonable and **must be complied with.** (Emphasis added.)

In a condemnation petition, the condemnor describes the specific property to be condemned and identifies the owner(s) and all other persons or entities that may have an interest in the property. Ordinarily, absent an amendment to the petition, the only property a condemnor may condemn is that described in the petition. **Neither a landowner nor a trial judge may expand the taking beyond that specified in the condemnation petition.** It is the condemnor who determines, and thereafter petitions to condemn, the land they deem necessary for the purpose of the public use at issue. *State ex rel. Dept. of Transportation v. Mehta,* 180 P.3d 1214, (Ok.Civ.App. 2008).

In *Public Service Company of Oklahoma v. B. Willis, C.P.A., Inc.* 155 P.3d 845 (Okla. App. 2006) at ¶14 the Court noted:

> Following the filing of PSO's 1992 Petition for Condemnation, the Trial Court appointed commissioners pursuant to 66 O.S.2001 § 53 **to value the portion of Willis's property that PSO was seeking to condemn**. (Emphasis added.)

PSO has stipulated that all of the documentation that created the surface easement was prepared by PSO's attorneys. The petition in condemnation

explicitly disclaimed the subsurface minerals. (Aplt. Apdx. at 105, 108) Of particular importance is the Report of Commissioners, drafted by PSO's attorneys, (Aplt. Apdx. at 114, 116) that stated unambiguously:

> The foregoing amount awarded, in our judgment, adequately compensates the owners of said lands for the title to **surface and** **surface rights** to said lands and improvements thereon, which result from the appropriation thereof by Petitioner, Public Service Company of Oklahoma. (Emphasis added.)

The importance of this statement is that Oklahoma law is clear that a condemnor acquires no rights in property unless that property is covered by the award of commissioners. *Watkins v. Board of Com'rs of Stephens County,* 174 P. 523, 524 (Okla. 1918) states in part:

> Section 24, art. 2, of the Constitution, prescribes in general the method of condemnation and must be strictly observed when the right of eminent domain is invoked. The section reads:
> "Private property shall not be taken or damaged for public use without just compensation, such compensation…shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law…**Until the compensation shall** **be paid to the owner, or into court for the owner, the property** **shall not be disturbed, or the proprietary rights of the owner** **divested…"**
> ¶6 It would follow that **any attempt** by the board of county commissioners **to appropriate private land or to fix the** **compensation contrary to such constitutional provision would be** **void though under the color of statutory authority.** (Emphasis added.)

In *Allen v. Transok Pipeline Company*, 552 P.2d 375 (Ok. 1976) the Oklahoma Supreme Court held:

40

¶13 The first syllabus by the Court in Stinchcomb v. Oklahoma City, 81 Okl. 250, 198 P. 508 (1921), states:

"The taking of private property for public use is the exercise of sovereign power, and is controlled in this state by the provisions of section 24, art. 2, of the Bill of Rights of our Constitution, and these provisions must be construed strictly in favor of the owner and against the condemning party, and until the compensation has been paid to the owner, his property cannot be disturbed, nor his proprietary rights divested. **Hence there can be no legal taking under the Constitution until the compensation, <u>as fixed by the commissioners,</u> is either paid to the owner of the property or into court for him.**" (Emphasis ours)

This Court has recognized that the inference to be drawn from the provisions requiring compensation prior to entry is **"that any entrance upon the property by the one condemning before payment of the award would be a trespass."** Stinchcomb, supra, at page 510.

¶14 **To hold otherwise would give this Court's stamp of approval to Appellee's position that it could take whatever land it desired for pipeline purposes, and regardless of its failure or refusal to follow the procedural steps required by law, the only sanction permitted, regardless of its contempt for the rights of the landowner, is that it might ultimately have to pay the fair market value of the land taken** - assuming the landowner undertakes the burden of prosecuting a reverse condemnation action.

¶15 We further hold that any person vested with the power of eminent domain who goes into possession under the power of eminent domain without condemnation proceedings has no title. (Article II, Section 24, Oklahoma Constitution.) To the extent that any prior decision of this Court, including *Rogers v. Oklahoma City*, supra, determined in such instances that the person going into possession had title in the nature of title by condemnation, such was error and the same is hereby overruled…

¶28 **We, therefore, hold Appellant has a separate and distinct cause of action in trespass for damages and for punitive damages…**

41

¶30 We believe that **to hold otherwise would bring about the legalization of willful and wanton trespass and <u>would preclude the full tort recovery available to landowners</u>** not forced to proceed under the condemnation statutes. (<u>Bold</u> emphasis added.)…

In *Public Service Co. v. B. Willis, C.P.A., Inc*., 941 P2d 995 (Okla. 1997) the

Court stated:

> ¶16 Condemnation is a proceeding strictly controlled by the constitution and statutes and **must be carried out in accordance with specific procedures prescribed by the legislature. Constitutional and statutory provisions relating to eminent domain must be strictly construed in favor of landowner and against the condemning party**…**All presumptions indulged must be in favor of those whose property is sought to be taken against their will…**
> ¶17… Before an entity having eminent domain authority can appropriate private land to its use, **all the steps legally requisite must have been taken.** (Emphasis added.)

PSO seized the subsurface to Willis' property not only without having taken **all** of the steps legally requisite but without having taken **any** of the steps legally requisite under the Oklahoma Constitution and statutes.  As a result, when PSO cut beneath the surface, it did so as a trespasser

In *Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc*., 155 P.3d 845 (Ok. Civ. App. 2006) at ¶21, the Court made it clear that all damages in the condemnation proceeding had to be calculated as of December 28, 1992 when PSO paid the commissioners' award.  PSO did not cut below the surface until October of 1994. No damages for the cutting below the surface could have been awarded in the state proceeding as a matter of law. All that could have been awarded was compensation

42

for surface rights and for the diminution in value of the subsurface from impressing an easement on the surface, not physically invading the subsurface two years later.

Thus, the law is clear that when PSO discovered it would need to excavate beneath the surface easement it had impressed on Willis' property to block development and appear to be building a rail road, PSO was confronted with following:

1. PSO could amend the petition in the ongoing condemnation proceeding and have new commissioners appointed to appraise the damage from the actual physical invasion of the subsurface and thus acquire rights to both the surface and subsurface in one condemnation proceeding; or

2. PSO could file a petition in condemnation in a new condemnation proceeding and acquire rights to the subsurface in a separate condemnation proceeding.

Instead, PSO did none of the above and simply had its lawyers engage in *ex-parte* communication with the Rogers County District Court to obtain an order holding that Willis had no right to challenge the taking of or **ever** be heard in defense of its property, (Aplt. Apdx. at 118), *Public Service Company v. B. Willis, C.P.A., Inc.*, 941 P. 2d 995. (Okla. 1997) at ¶ 5), and then trespassed beneath the surface easement, excavated a large cut, removed coal and limestone, placed it

track at the bottom of the cut, turned it over to BNSF pursuant to an Industrial Track and Operating Agreement that remains in effect, and BNSF ran trains through the cut for many years.

It has long been the law in Oklahoma that the remedy for an injury to the land due to willful or negligent construction or operation is not such remedy as is given by the statutes relating to eminent domain.  Rather the land owner in such case has a separate and distinct cause of action, such as trespass, and is not entitled to have such injuries considered in awarding damages under condemnation proceedings. *Oklahoma Gas & Elec. Co. v. Miller Bros. 101*, 46 P.2d 570 (Okla. 1935).

In *Kirby Machinery, Inc. v. City of Oklahoma City*, 19 P.3d 331, 333 (Ok. Civ. App. 2001) the Court stated:

> It is axiomatic that where private property is taken by eminent domain, damages are determined as of the time the property is taken…In *Curtis v. WFEC R.R., Co*, 2000 OK 26, 1 P.3d 996, **the Oklahoma Supreme Court held that damages, caused <u>when the easement holder exceeded the scope of the grant of the easement,</u> were recoverable in a lawsuit sounding in tort**…*Also see U.S. v. 79.20 Acres of Land*, 710 F.2d 1352, 1356, n.6 (**"Damages incurred after a taking are not compensable in a condemnation proceeding."**)  (Emphasis added.)

The District Court has now asserted that PSO could completely ignore 66 O.S. § 7, file condemnation proceedings for only a surface easement (as already held by this Court), only pay compensation to the Court Clerk for a surface

easement and then, two years later, some how have acquired the right to cut deep into the subsurface excavating, not just coal and limestone, but the top soil, clay and shale and place its track at the bottom of the cut and have its contractor BNSF run trains through the cut for years without ever complying with the statutory requirements set out in 66 O.S. §§ 7 and that Dickson should then be sanctioned for asserting otherwise on behalf of his client.

Were the District Court's ruling correct, then the legislature did a vain and useless act when it enacted 66 O.S. § 7, as that statute would be superfluous. However, such is not the law in Oklahoma. Under Oklahoma law, the express terms of the grant are controlling and what may be necessary or reasonable to a present use of the dominant estate is not controlling. *Lindhorst v. Wright*, 616 P.2d 450 (Okla. Ct. App. 1980). *Kirby Machinery, Inc. v. City of Oklahoma City*, 19 P.3d 331 (Ok. Civ. App. 2001) makes clear that the landowner's state law remedy, when the easement holder exceeded the scope of the grant of the easement, is a lawsuit sounding in tort. And this case, in which Dickson has now been sanctioned, originally removed from the Tulsa County District Court by BNSF, is that lawsuit.

As PSO never posted a commissioners' award for anything other than surface and surface rights, PSO was trespassing from the day it physically invaded the subsurface to create the cut and BNSF was trespassing once it took possession

45

of the cut pursuant to the Industrial Track and Operating Agreement that remains in effect to this day.

It is absurd to say that there was no legal basis for the motion for partial summary judgment filed by Dickson on behalf of Willis.

**E.     Dickson's Letter to PSO's Counsel.**

On page 18 of the R&R appears the following that was adopted by the Court:

> Willis' owner testified that the original letter from PSO's counsel arrived on a fax machine shared by him and Dickson, that he saw it and provided it to Dickson but that he did not authorize Dickson's response, which rejected, ***on behalf of Willis***, any settlement on the basis proposed by PSO.  Id.  Dickson's rejection of PSO's invitation to engage in settlement discussions, without the consent of his client, was unreasonable and vexatious and further multiplied these proceedings without any legitimate basis.  Dickson's action, in this regard, provides the final basis for sanctions under Section 1927. (Emphasis added.)

This Court, in *Mann v. Reynolds*, 46 F.3d 1055 (10th Cir. 1995) held that a District Court abused its discretion in the award of attorney fees when it "based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling."  *Mann* at 1062 quoting *Wang v. Hsu*, 919 F.2d 130 (10th Cir. 1990).  The ruling of the District Court here clearly falls into that category.

Dickson was sanctioned for purportedly sending a letter that was a "rejection of PSO's invitation to engage in settlement discussions."  However, the previous

sentence acknowledges that all Dickson's response did was to reject "any settlement on the basis proposed by PSO." It did not reject settlement discussions.

Even worse, the R&R falsely states that Dickson's response rejected any settlement on the basis proposed by PSO "***on behalf of Willis.***"

The letter PSO's counsel sent to Dickson inquired into the interest of both Willis and Dickson in dropping the case against PSO in exchange for PSO dropping its claims for attorney fees against them. (Aplt. Apdx. at 127) The reason PSO inquired into the interest of Dickson, separate and apart from the interest of Willis, is that Dickson had a perfected attorney lien for a contingency fee contract. (Notice of Attorney Lien Doc. 207)

Under Oklahoma law, 5 O.S. §§ 6, 7, and 8, such an attorney is not required to agree to a settlement of the case. *In Re Western Real Estate Fund, Inc*., 922 F.2d 592 (10th Cir. 1990), *Jones v. Farmers Ins Exchange of Los Angeles Cal*, 112 F.Supp. 952 (D.C. Okl.), *Goldberg's Loan Office v. Evans*, 37 P.2d 286 (Okla. 1934).

Dickson's response to PSO's letter (Aplt. Apdx. at 129) made it explicitly clear that the response was only on behalf of Dickson and was not on behalf of Willis. The letter stated:

> I wish to advise you that ***I*** have no such interest in settling the case ***under those terms.*** As you are aware, I have a perfected attorney's lien in this case based on a contingency fee arrangement. I would point out that if PSO were to settle around me I have the right to sue

in my own right to establish what the claim would have been worth absent the settlement agreement. * * *
*__I will contact you after I have discussed this matter further with my__*
*__client.__* (Emphasis added.)

The assertion of Dickson's statutory lien rights was in no way unreasonable and vexatious nor did Dickson ever represent that his letter was speaking for Willis. The holding of the District Court in this regard is an utter fabrication.

Not one of the actions of Dickson cited by the District Court as the basis for imposing sanctions rises to the level of conduct that was done with out any colorable legal basis to justify sanctions under the standards established by this Court.

## V.     The District Court Erred in Permitting a Double Recovery for PSO.

PSO has asserted a demand for sanctions against Willis' attorney pursuant to 28 U.S.C. § 1927 that states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the *__excess__* costs, expenses, and attorneys' fees reasonably incurred because of such conduct. (Emphasis added.)

This Court has made it clear that the only purpose of § 1927 is to compensate parties for excess costs they have incurred. *Hamilton v. Boise Cascade Exp*. 519 F.3d 1197 (10th Cir. 2008)

However, the excess costs PSO claims to have incurred as a result of the allegedly vexatious conduct of Dickson were also part of the total expenses PSO incurred and sought to recover from Willis under two totally different statutes. (Motion for Attorney Fees and Costs Doc. 203) When PSO gave Willis, in exchange for good and valuable consideration, a complete release from its claims against Willis for those same fees and costs, PSO's claim against Dickson became moot, as there were no longer any "excess" fees and costs to recover from Dickson. As a result, upon the entry of the Stipulation of Dismissal Doc. 261, PSO's motion against Dickson under § 1927 became moot, precisely as the District Court correctly held in its Order Doc. 262. As a result, it was clearly error to grant PSO a judgment against Dickson as a sanction for the same fees and costs PSO had already recovered from Willis. When Dickson raised this matter with the U.S. Magistrate (Aplt. Apdx at 82, 85-89), the latter seemed not to understand the concept and failed to address it in the Report and Recommendation. At the hearing on January 12, 2012 the Court stated:

> If that's true, then you could never settle a case against—if you had two plaintiffs or two defendants, you could never settle a case against one of them without giving up your claim for attorney fees against all of them. (Apl. Apdx at 88**,** Lines 7-11.)

However, the foregoing overlooks the fact that Willis and Dickson were not co-plaintiffs or co-defendants, jointly and severally liable. PSO sought to recover its legal fees and costs from them under totally different statutes and theories. The

49

portion of its fees and costs PSO seeks to recover from Dickson was a subset of the fees and costs it sought to recover from Willis; PSO sought 100% of its legal fees and costs from Willis. PSO received good and valuable consideration from Willis in full satisfaction of its claim against Willis for all of its legal fees and costs in this case.  PSO may not "double dip" and recover those same fees and costs again, this time from Dickson as "excess"  fees and costs for which it should not be compensated a second time.

The law does not permit such a double recovery.  *Eateries v. J.R. Simplot Co.*, 346 F.3d 1225 (10th Cir. 2003), *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925 (10th Cir. 2001), *Macsenti v. Becker,* 237 F.3d 1223 (10th Cir. 2001), *Houck v. Hold Oil Corp.*, 867 P.2d 451 (Okla. 1993).

To repeat, upon the entry of the Stipulation of Dismissal Doc. 261, PSO's motion against Dickson under § 1927 became moot, precisely as the District Court correctly held in its Order Doc. 262.  As a result, the District Court erred when it allowed PSO a double recovery by awarding PSO a judgment for the same fees and costs as a sanction under 28 U.S.C. § 1927.

## VI.    The District Court Erred in Allowing Attorney Fees Based on Block Billing and For Travel Costs.

The Tenth Circuit has made it clear that attorneys seeking attorney fees have a duty to support their claim by producing "meticulous, contemporaneous time records" to present to the court:

These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks-for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on. *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).

In *Bratcher v. Bray-Doyle Independent School District No. 42 of Stephens Count, Oklahoma, supra* at 725 this Court held that it was "counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero," quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986). See also *Mann v. Reynolds, supra* at 1062. ("It is the burden of the party applying for attorney fees to establish the extent and reasonableness of the request, supporting the claim with "meticulous, contemporary time records.")

As Dickson argued to the District Court at the hearing on January 12, 2012 and the R&R acknowledges, the billings submitted to the Court by PSO's attorneys reflect block billing.  At that same hearing, Dickson submitted to the Court an itemized list of the specific billings he objected to based on block billing.  If a block billing contained items that were not related to the specific actions of Dickson that the Court asserted were sanctionable, then Dickson listed it in the list submitted to the Court at the hearing on January 12, 2012.  The transcript of that hearing makes clear that Dickson made it clear that the itemized list of billings submitted to the Court by Dickson were objected to because the billings contained a charge for at least one item not connected to the conduct the Court had asserted

was sanctionable and it was impossible for either Dickson or the Court to determine how much of the block of time related to the action of Dickson the Court asserted was sanctionable and how much of the time was unrelated to the actions the Court found sanctionable.  (Aplt. Apdx. at 89-92)

Since the burden is on the attorney seeking fees to produce adequate billing records, *Ramos v. Lamm, supra, Tomazzoli v. Sheedy,* 804 F.2d 93 (7th Cir. 1986), and the block billing records submitted to the Court by PSO's attorneys are legally insufficient, PSO is not entitled to recover those fees.

The R&R attempts to overcome this problem by arbitrarily reducing the amount awarded by 10% for block billing and 5% for entries unrelated to the recommended sanction.   However, this reduction is arbitrary and capricious without any rational basis and ignores the requirements established in *Ramos v. Lamm, supra* and was an abuse of discretion by the Court.  *Roth v. Green*, 466 F.3 d 1179, 1187 (10th Cir. 2006).

The R&R allows PSO to recover travel costs for its attorneys commuting from their office to the court house.  Such costs are not allowable.   *Ramos v. Lamm*, *supra.*

## <u>CONCLUSION</u>

The Court should vacate the order of District Court imposing sanctions.

Respectfully submitted,

*s/William T. Dickson*
William T. Dickson
O.B.A. No. 10634
D.C. Cir. No. 47712
1743 East 71st Street
Tulsa, Oklahoma
74136
918-550-1463

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) (7) (B) because this brief contains 12,958 words, excluding the parts of the brief exempted by Fed. R. App. 32(a) (7) (B) (iii).
2. This brief complies with the type face requirements of Fed. R. App. P. 32(a) (5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect in 14 point font Times New Roman type style.

*s/William T. Dickson*
William T. Dickson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2012 I electronically transmitted the attached document to the Clerk of the Court using the ECF filing system. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark H Ramsey   mramsey@soonerlaw.com,

Clinton Derek Russell   crussell@soonerlaw.com

R Stratton Taylor   carabb@soonerlaw.com

*/s/ William T. Dickson*
William T. Dickson
O.B.A. No. 10634